UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                                    Case No. 8:18-bk-09090-MGW
                                                          Chapter 7

Matthew Francis Bartolomeo
Olga Bartolomeo,

                    Debtor(s).
_____/

### CHAPTER 7 TRUSTEE'S APPLICATION TO RETAIN BK GLOBAL REAL ESTATE SERVICES AND HUNT REALTY GROUP TO PROCURE CONSENTED PUBLIC SALE PURSUANT TO 11 U.S.C. §§327, 328 & 330

Christine Herendeen, as Chapter 7 Trustee (the "Trustee") for the above referenced Debtor (together, the "Debtor"), files this Application to authorize retention of (1) BK Global Real Estate Services ("BKRES") and (2) Hunt Realty Group, Inc. (the "Listing Agent")  In support thereof, the Trustee respectfully states as follows:

#### PRELIMINARY STATEMENT

The Trustee requests approval to retain BKRES and Hunt Realty Group, at no cost to the estate, to negotiate with and persuade the first lien holder on certain real property in which the estate has no equity to (1) allow Trustee to sell such property at the highest price that the market will bear, (2) waive the resulting deficiency claim and (3) pay a 11 U.S.C. § 506 surcharge to provide a carve out for the benefit of the estate and pay all other sale expenses, including a 6% brokerage commission that will be shared equally by BKRES and Listing Agent only upon the closing of a sale that is approved by this Court.

BKRES and its affiliates have proprietary technology and a national team of experienced loan servicing specialists, asset managers, negotiators, trustee relation managers, real estate brokers and agents, closing specialists and attorneys with extensive experience in procuring the consent of mortgage lenders and servicers to sell over-encumbered properties and provide

significant cash recoveries to selling estates with no equity, through the Consented Sale™ process described herein.

BKRES and Listing Agent will not be entitled to any compensation from the estate whatsoever under any circumstances. They will only receive and share a customary brokerage commission that is paid by secured creditor as a 11 U.S.C. § 506 surcharge approved by this Court.

The Trustee (1) believes that hiring BKRES and Listing Agent to pursue a Consented Sale™ will likely result in secured creditor paying a carve out for the benefit of the estate with proceeds from the public sale of an asset in which the estate has no equity and (2) expects to obtain secured Creditors' agreement to a Consented Sale™, and bring a separate motion seeking this Court's approval of the procedures, terms and conditions by which the over-encumbered property will be sold, within the coming months.

## Jurisdiction

1.      This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (M), (N), and (O).

2.       Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

## Background

3.      On October 24, 2018, the Debtors commenced this case by filing a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code.

4.      Thereafter, the Trustee was appointed as the Chapter 7 Trustee in this case.

5.    The Trustee held and concluded the 341 meeting on January 7, 2019.

6.    The Debtor is the sole owner of real property located at 12611 Lake Vista Blvd., Gibsonton, FL 33534 (the "Property").

7.    The Debtor scheduled the Property with a value of $240,000.00.  The Property is subject to mortgage lien (the "Senior Mortgage") in favor of Quicken Loans Inc. (the "Secured Creditor") in an amount exceeding $222,828.30.

8.    The Trustee, after reviewing certain materials, including (without limitation) the BK Score™[1], sales analysis report and opinion of value for the Property provided by BKRES and Listing Agent, has determined it to be in the best interest of the Debtor's estate and all creditors to negotiate to obtain Secured Creditor's agreement and consent ("Consent") to do the following, with the proviso that the hired professionals, BKRES or Local Agent, shall not participate in the sale and purchase of any estate property except as hired brokers:

    a.  sell the Property to whichever third party Trustee determines to have made the best qualified offer during a public sale approved by the Court;

    b.  release the Senior Mortgage and otherwise waive all of its claims against the estate with respect to the Property (including any deficiency claims resulting from the proposed sale); and

    c.  If the Property is sold to a third party, agree to a 11 U.S.C. § 506 surcharge to pay all the expenses associated with the proposed sale, including the payment of a 6% real estate brokerage commission to BKRES and Listing Agent and reimbursement of their out-of-pocket expenses, and provide a carveout for the benefit of allowed unsecured creditors of the Debtor's estate;

---

[1] The BK Score™ is a 100-point rating that is generated by a proprietary algorithm from 10 unique property attributes in order to consistently measure sales confidence and predict market value.

    d.   If Secured Creditor purchases property, agree to a 11 U.S.C. § 506 surcharge to pay all the expenses associated with the proposed sale, including the payment of a 2% real estate brokerage commission to BKRES, of which a $500.00 fee will be paid to Listing Agent, and provide a carveout for the benefit of allowed unsecured creditors of the Debtor's estate.

9.   Trustee expects to obtain Secured Creditors' Consent and bring a separate motion seeking an order approving the sale of the Property (the "<u>Motion to Approve Sale</u>") within several months of the entry of the order sought by this Application.

10.   By this Application, the Trustee requests authority pursuant to Sections 327, 328(a) and 330 of the Bankruptcy Code to (a) retain BKRES and Listing Agent to procure Secured Creditors' Consent, and (b) approve Secured Creditor's payment of the fees described below directly to BKRES and Listing Agent at closing of the sale of the Property, if and when the Consent and Motion to Approve Sale are granted.

<u>APPLICATION</u>

11.   Section 328(a) of the Bankruptcy Code provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327...on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed percentage or fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Section 330 of the Bankruptcy Code permits the Court to "award to a trustee… or a professional person employed under section 327…(A) reasonable compensation for actual, necessary services rendered [by such party]… and (B) reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). Compensation will be determined later in accordance with 11 U.S.C. § 330.

12.     As further described in the materials attached to their affidavits, BKRES[2] and Listing Agent have extensive experience obtaining the consent and agreement of mortgage lenders and servicers to the sale of their collateral and resolution of any resulting unsecured claims in order to produce a recovery for estates from over-encumbered assets in which the estate has no equity.

13.     The Trustee believes that the highest and best value for the Property will be generated through a sale in which the Property is widely marketed to the public and offered at the highest price that the market will bear.  The Trustee further believes that such a sale is in the best interest of the Debtor's estate, but can only be achieved if Secured Creditors' Consent is first obtained.  That is why the Trustee believes that retaining BKRES and Listing Agent to obtain Secured Creditor's Consent is in the best interests of the Debtor's estate.

14.     In no event will the estate have any obligation to pay BKRES or Listing Agent.  The terms of the BKRES Agreement and Listing Agreement provide that BKRES and Listing Agent are only entitled to payment if and when (a) Secured Creditor grants its Consent, (b) the Motion to Approve Sale is granted and (c) the Property is sold, in which event BKRES and Listing Agent will receive and share a 6% real estate brokerage commission at closing in accordance with the order approving the sale.

15.     BKRES and Listing Agent will not be entitled to any fees if Secured Creditor does not grant its Consent or the Court does not grant the Motion to Approve Sale.

16.     The Trustee submits that the terms of employment and compensation as set out in the BKRES Agreement and listing agreement are reasonable in light of the extensive experience of BKRES and Listing Agent and the nature of the services they provide.

17.     BKRES attested that it is a disinterested person within the meaning of

---

[2] BKRES is the broker affiliate of BK Global (http://www.bkginc.com/).

Section 101(14) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2014 and 2016(a). Attached hereto as Exhibit "A" is an Affidavit of Disinterestedness of BKRES. BKRES also attests, pursuant to Bankruptcy Rule 2016, that it shall not split or share its fee with any individual or entity other than Listing Agent.

18. Listing Agent attested that it is a disinterested person within the meaning of Section 101(14) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2014 and 2016(a). Attached hereto as Exhibit "B" is an Affidavit of Disinterestedness of Listing Agent. Listing Agent also attests, pursuant to Bankruptcy Rule 2016, that it shall not split or share its fee with any individual or entity other than BKRES.

CONCLUSION

For the foregoing and all other necessary and proper purposes, the Trustee seeks the Court's authority to retain BKRES and Listing Agent in this case, and requests that the Court approve the compensation arrangements set forth in the BKRES Agreement and Listing Agreement pursuant to Sections 327, 328(a) and 330 of the Bankruptcy Code. Attached hereto as Exhibit "C" is the Listing Agreement.

Dated: May 13, 2019,

Respectfully submitted,

/s/ Christine Herendeen
Chapter 7 Trustee
P.O. Box 152348
Tampa, FL 33684
Telephone: (813) 438-3833
Email:
clherendeen@herendeenlaw.com

<u>**CERTIFICATE OF SERVICE**</u>

I certify that a true and correct copy of the Application to  Retain BK Global Real Estate Services and Hunt Realty Group to Procure Consented Public Sale Pursuant to 11 U.S.C. §§327, 328 & 330 was provided by electronic delivery or U.S. mail on May 13, 2019 to:

U. S. Trustee, 501 E. Polk Street Suite 1200, Tampa, FL 33602

Samantha L Dammer, Tampa Law Advocates, P.A., 620 East Twiggs, Suite 110, Tampa, FL 33602

Matthew Bartolomeo and Olga Bartolomeo, 3854 Lake Saint George Dr, Palm Harbor, FL  34684

/s/ Christine L. Herendeen
Christine L. Herendeen, Trustee

MIDDLE DISTRICT OF FLORIDA
-------------------------------------------------
In re:                                    :        Chapter 7
                                          :
                                          :        Case No. 18-09090
                                          :
Debtor.                                   :
**Matthew Bartolomeo,**                   :
                                          :
                                          :
-------------------------------------------------

### DECLARATION OF PATRICK BUTLER IN SUPPORT OF APPLICATION TO RETAIN BK GLOBAL REAL ESTATE SERVICES AND HUNT REALTY GROUP TO PROCURE CONSENTED PUBLIC SALE PURSUANT TO 11 U.S.C. § 327, 328 AND 330

The undersigned, Patrick Butler ("Declarant") hereby states:

1.      I am employed by BK Global Real Estate Services ("Applicant" or "BKRES"),

which is an entity duly licensed as a real estate brokerage by the State of Florida located at 1095

Broken Sound Pkwy. NW, Suite 100, Boca Raton, FL 33487.  I am Applicant's broker-in-charge

and am authorized by Applicant to submit this Declaration on Applicant's behalf in support of the

annexed Application to Retain BKRES and in accordance with Bankruptcy Rule 2014.

2.      Based upon the information discussed below, I believe that Applicant is a

disinterested person and does not hold or represent any interest adverse to the interest of the

Debtor's estate as that term is defined in Section 101(14) of the Bankruptcy Code.

3.      To the best of my knowledge:  (a) neither BKRES nor any of its employees has any

connection with the Debtor, its creditors in this case, the Chapter 7 Trustee, the Office of the United

States Trustee, or any employees thereof or any party in interest herein; (b) BKRES and each of

its employees are "disinterested persons," as that term is defined in Section 101(14) of the

EXHIBIT "A"

the Bankruptcy Code; and (c) neither BKRES nor any of its employees hold or represent an interest adverse to the Debtor's estate.

4.    A description of the qualifications of, and services provided by, BKRES is attached as <u>Schedule 1</u>.

5.    That I have read the application of the Trustee regarding the retention and compensation of BKRES and agreed to be bound by the terms and conditions represented therein.

6.    That I further understand that the Court, in its discretion, may alter the terms and conditions of employment and compensation, as fully set forth in the BKRES Agreement that is attached as <u>Schedule 2</u> hereto, as it deems appropriate.

Verified under penalty of perjury that the foregoing is true and correct this <u>7th</u> day of May 2019.

Patrick Butler
Corporate Broker

The foregoing instrument was acknowledged before me this 7 day of May 2019, by Patrick Butler who provided identification or is personally known to me and who aid take an oath.

Notary Public-State of Florida

My commission expires



Notary Public State of Florida
Priscilla L Melendrez
My Commission GG 156838
Expires 10/31/2021

## **SCHEDULE I**

BK Global Real Estate Services is a licensed real estate brokerage by the State of Florida, located at 1095 Broken Sound Parkway N.W., Suite 100, Boca Raton, Florida, 33487.

BK Global Real Estate Services has a strong background and extensive experience in dealing with the mortgage servicing industry and is considered an expert in assisting in the negotiations with secured creditors whose debt is in excess of the market value of the real property and in negotiating short sales.

BK Global Real Estate Services has been providing real estate services to Chapter 7 bankruptcy trustees since 2014.

BK Global Real Estate Services has developed a process to assist Chapter 7 trustees in the sale of over-encumbered real estate to obtain the consent of the secured creditor to allow the Chapter 7 trustee to sell the real property and to assist the Chapter 7 trustee in negotiating a carve out for the bankruptcy estate that will provide a meaningful distribution to the unsecured creditors..

BK Global Real Estate Services is to be retained by the Chapter 7 trustee pursuant to 11 U.S.C. § 327. The first step is for BK Global Real Estate Services to assist the Chapter 7 trustee in obtaining the consent of the secured creditor(s) to allow the Chapter 7 trustee to sell the secured real estate. Those negotiations will include establishing a carve-out of the sale proceeds to the bankruptcy estate that will provide a meaningful distribution to unsecured creditors.

In addition, a carve out will be established to pay a real estate commission to BK Global Real Estate Services and a local real estate licensed broker. In addition, as part of the negotiations, the secured creditor will be required to waive the filing of any deficiency claim.

Once the Court has approved the retention of BK Global Real Estate Services and the local real estate licensed broker, then the real property will be listed for sale at an agreed listing price by the secured creditor.

A motion will be filed to approve the settlement and compromise reached between the Chapter 7 trustee and the secured creditor.

BK Global Real Estate Services has successfully assisted Chapter 7 trustees in 33 court districts in the consented program. BK Global Real Estate Services does this by achieving the highest sale prices for properties as opposed to the more common "discounted sale" often presented to secured creditors by less experienced service providers. The transaction is never consummated unless the carve-out percentage or fee is sufficient to provide a meaningful distribution to unsecured creditors. BK Global Real Estate Services has standards in the mortgage industry whereby all parties can have a mutually beneficial outcome to the sale. The sale of over-encumbered real estate in bankruptcy presents a superior outcome to all parties.

- Unsecured creditors achieve a meaningful distribution on many more bankruptcy cases than they do on 'no asset' cases;

- The Chapter 7 trustee is able to conduct these transactions in a very cost-effective manner substantiating the carve-out amounts generated in these sales; and

- Secured creditors achieve more favorable recovery than they would via foreclosure including minimized compliance risk.

Page 4-2 of the Handbook for Chapter 7 Trustee states that by virtue of 11 U.S.C. § 323(a) the trustee is a representative of the estate. Further, the handbook states, "The trustee is a fiduciary charged with protecting the interest of all estate beneficiaries – namely, all classes of creditors, including those holding secured, administrative, priority and non-priority unsecured claims, as well as the debtor's interest in exemptions and in any possible surplus property."

BK Global Real Estate Services is a licensed Real Estate Broker and acts in the capacity as a licensed agent/broker. As a member of the real estate professional association, BK Global Real Estate Services is permitted to work with local brokers and share fees for work conducted. Section 504(b) of the Bankruptcy Code permits the compensation BK Global Real Estate Services receives for work conducted on a case.

BK Global Real Estate Services has developed a nationwide network of licensed real estate brokers that are trained in the sale of over-encumbered real estate in bankruptcy. BK Global Real Estate Services co-lists the real estate with one of our local trained licensed brokers. The trustee hires both BK Global Real Estate Services and the local broker to perform the required services. The listing commission is split between BK Global Real Estate Services and the local broker.

For these fees, both BK Global Real Estate Services and the local broker share in the duties that are required to conduct a consented sale in bankruptcy.

BK Global Real Estate Services' services include, but are not limited to, the following:

- Researching the real estate, running title and lien searches to identify creditors for resolution and any title issues;
- Advising the trustee of any issues and discuss potential resolutions;
- Conducting the resolutions under the trustee's direction;
- Assisting the trustee in the collection of documents and information for employment;
- Making contact with the secured creditor(s);
- Notifying them of the upcoming sale and identifying servicer requirements;
- Assisting the trustee in establishing market value and negotiating with the servicer an acceptable sales price and establishing a carve-out;
- Development of online marketing, email campaign and full nationwide marketing services;
- Conducting on online sale;
- Use of the technology platform;

- Assist the trustee in the review of all offers and coordinate the final documentation of the offer accepted by the trustee;
- Managing contract requirements such as inspections, appraisals and HOA applications;
- Coordinating closings and assisting the trustee in the collection of required information for court filing; and
- Closing the transaction and ensuring the estate has received the appropriate funds.

Local broker services include, but are not limited to:

- Inspecting the property and completing a broker's price opinion;
- Listing the property in the multiple listing service (MLS); and
- Posting a for sale sign in the yard and coordinating showings.

U.S. Bankruptcy Court Districts where BK Global Real Estate Services conducted Consented Sales:

- Eastern District of Arkansas
- Central District of California
- Eastern District of California
- Southern District of California
- District of Colorado
- District of Connecticut
- Middle District of Florida
- Southern District of Georgia
- District of Hawaii
- Northern District of Illinois
- Northern District of Indiana
- Southern District of Indiana
- Western District of Kentucky
- Eastern District of Louisiana
- Middle District of Louisiana
- Western District of Louisiana
- District of Massachusetts
- District of Maryland
- Eastern District of Michigan
- Eastern District of North Carolina
- District of New Jersey
- District of Nevada
- Eastern District of New York
- Northern District of Ohio
- Southern District of Ohio
- District of Oregon
- Eastern District of Pennsylvania

- Middle District of Pennsylvania
- Western District of Pennsylvania
- Northern District of Texas
- Western District of Texas
- Western District of Washington

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

                                     Case No. 8:18-bk-09090-MGW

Matthew Francis Bartolomeo            Chapter 7
and Olga Bartolomeo,

                Debtor(s).

_____/

## **DECLARATION IN SUPPORT OF EMPLOYMENT**

1.      I, Al Carapella, am a licensed real estate agent with Hunt Realty Group, engaged to assist the trustee in carrying out the trustee's duties under the Bankruptcy Code.

2.      I do not hold or represent an interest adverse to the estate.

3.      I am not a creditor, equity security holder, or insider of the Debtor.

4.      I am not, and was not within the two years before the petition date, a director, officer, or employee of the Debtor.

5.      I have no interest materially adverse to the interest of the estate or of any class of creditors or equity holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtor, or for any other reason.

6.      I further state that neither I, nor Hunt Realty Group have any connection or otherwise have no interest adverse to the Debtors, creditors, or any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the Office of the United States Trustee.

7.      I have not and will not agree to share my compensation for such services with any person, with the exception of a qualified cooperating real estate broker, if one shall exist.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on:  March 28, 2019

                         By: _____
                                Al Carapella
                                Hunt Realty Group
                                2713 Buckhorn Oaks Dr.
                                Valrico, FL 33594

# Exclusive Right of Sale Listing Agreement

Realtors

1  This Exclusive Right of Sale Listing Agreement ("Agreement") is between

2*  **Matthew Francis** Bartolomeo/ Christine Herendeen Bankruptcy Trustee BK-18-09090 - MGW _____ ("**Seller**")

3*  and _____ Hunt Realty Group/ Al Carapella _____ ("**Broker**").

4  **1. Authority to Sell Property: Seller** gives **Broker** the EXCLUSIVE RIGHT TO SELL the real and personal
5  property (collectively "Property") described below, at the price and terms described below, beginning
6*  ___ March 21, 2019 ___ and terminating at 11:59 p.m. on ___ June 28, 2019 ___ ("Termination Date"). Upon
7  full execution of a contract for sale and purchase of the Property, all rights and obligations of this Agreement will
8  automatically extend through the date of the actual closing of the sales contract. **Seller** and **Broker** acknowledge
9  that this Agreement does not guarantee a sale. This Property will be offered to any person without regard to race,
10  color, religion, sex, handicap, familial status, national origin, or any other factor protected by federal, state, or local
11  law. **Seller** certifies and represents that she/he/it is legally entitled to convey the Property and all improvements.

12  **2. Description of Property:**
13*  (a) **Street Address:** 12611 Lake Vista Blvd Gibsonton FL. 33534

14  _____

15*  Legal Description: _____

16*  _____ ☐ See Attachment _____

17*  (b) **Personal Property, including appliances:** _____

18*  _____ ☐ See Attachment _____

19  (c) **Occupancy:**
20*  Property ☒ is ☐ is not currently occupied by a tenant. If occupied, the lease term expires ___ Apr 30, 2019 ___.

21  **3. Price and Terms:** The property is offered for sale on the following terms or on other terms acceptable to **Seller**:
22*  (a) **Price:** $260,000.00
23*  (b) **Financing Terms:** ☒ Cash ☒ Conventional ☐ VA ☐ FHA ☐ Other (specify) _____
24*  ☐ **Seller Financing: Seller** will hold a purchase money mortgage in the amount of $ _____
25*  with the following terms: _____
26*  ☐ Assumption of Existing Mortgage: Buyer may assume existing mortgage for $ _____ plus
27*  an assumption fee of $ _____. The mortgage is for a term of _____ years beginning in
28*  _____, at an interest rate of _____% ☐ fixed ☐ variable (describe) _____.
29*  Lender approval of assumption ☐ is required ☐ is not required ☐ unknown. **Notice to Seller:** (1) You may
30  remain liable for an assumed mortgage for a number of years after the Property is sold. Check with your
31  lender to determine the extent of your liability. **Seller** will ensure that all mortgage payments and required
32  escrow deposits are current at the time of closing and will convey the escrow deposit to the buyer at closing.
33  (2) Extensive regulations affect **Seller** financed transactions. It is beyond the scope of a real estate licensee's
34  authority to determine whether the terms of your **Seller** financing agreement comply with all applicable laws or
35  whether you must be registered and/or licensed as a loan originator before offering **Seller** financing. You are
36  advised to consult with a legal or mortgage professional to make this determination.
37*  (c) **Seller Expenses: Seller** will pay mortgage discount or other closing costs not to exceed _____ 0% of the
38  purchase price and any other expenses **Seller** agrees to pay in connection with a transaction.

39  **4. Broker Obligations: Broker** agrees to make diligent and continued efforts to sell the Property until a sales
40  contract is pending on the Property.

41  **5. Multiple Listing Service:** Placing the Property in a multiple listing service (the "MLS") is beneficial to **Seller**
42  because the Property will be exposed to a large number of potential buyers. As a MLS participant, **Broker** is
43  obligated to timely deliver this listing to the MLS. This listing will be promptly published in the MLS unless **Seller**
44  directs **Broker** otherwise in writing. **Seller** authorizes **Broker** to report to the MLS this listing information and price,
45  terms, and financing information on any resulting sale for use by authorized Board / Association members and
46  MLS participants and subscribers unless **Seller** directs **Broker** otherwise in writing.

Seller ( ____ ) ( ____ ) and Broker/Sales Associate ( ____ ) acknowledge receipt of a copy of this page, which is Page 1 of 4.

ERS-17W  Rev 6/17
Serial#: 080267-200155-3211787

©2017 Florida Realtors®

EXHIBIT "C"

6. **Broker Authority: Seller** authorizes **Broker** to:
   (a) Advertise the Property as **Broker** deems advisable including advertising the Property on the Internet unless limited in (6)(a)(i) or (6)(a)(ii) below.
   (**Seller opt-out**) (**Check one if applicable**)
   (i) ☐ Display the Property on the Internet except the street address.
   (ii) ☐ **Seller** does not authorize **Broker** to display the Property on the Internet.
   **Seller** understands and acknowledges that if **Seller** selects option (ii), consumers who search for listings on the Internet will not see information about the Property in response to their search.
   _____/_____ **Initials of Seller**
   (b) Place appropriate transaction signs on the Property, including "For Sale" signs and "Sold" signs (once **Seller** signs a sales contract) and use **Seller's** name in connection with marketing or advertising the Property.
   (c) Obtain information relating to the present mortgage(s) on the Property.
   (d) Provide objective comparative market analysis information to potential buyers.
   (e) (**Check if applicable**) ☒ Use a lock box system to show and access the Property. A lock box does not ensure the Property's security. **Seller** is advised to secure or remove valuables. **Seller** agrees that the lock box is for **Seller's** benefit and releases **Broker**, persons working through **Broker**, and **Broker's** local Realtor Board / Association from all liability and responsibility in connection with any damage or loss that occurs. ☒ Withhold verbal offers. ☐ Withhold all offers once **Seller** accepts a sales contract for the Property.
   (f) Act as a transaction broker.
   (g) **Virtual Office Websites:** Some real estate brokerages offer real estate brokerage services online. These websites are referred to as Virtual Office Websites ("VOWs"). An automated estimate of market value or reviews and comments about a property may be displayed in conjunction with a property on some VOWs. Anyone who registers on a VOW may gain access to such automated valuations or comments and reviews about any property displayed on a VOW. Unless limited below, a VOW may display automated valuations or comments and reviews about this Property.
   ☐ **Seller** does not authorize an automated estimate of the market value of the listing (or a hyperlink to such estimate) to be displayed in immediate conjunction with the listing of this Property.
   ☐ **Seller** does not authorize third parties to write comments or reviews about the listing of the Property (or display a hyperlink to such comments or reviews) in immediate conjunction with the listing of this Property.

7. **Seller Obligations:** In consideration of **Broker's** obligations, **Seller** agrees to:
   (a) Cooperate with **Broker** in carrying out the purpose of this Agreement, including referring immediately to **Broker** all inquiries regarding the Property's transfer, whether by purchase or any other means of transfer.
   (b) Provide **Broker** with keys to the Property and make the Property available for **Broker** to show during reasonable times.
   (c) Inform **Broker** before leasing, mortgaging, or otherwise encumbering the Property.
   (d) Indemnify **Broker** and hold **Broker** harmless from losses, damages, costs, and expenses of any nature, including attorney's fees, and from liability to any person, that **Broker** incurs because of (1) **Seller's** negligence, representations, misrepresentations, actions, or inactions; (2) the use of a lock box; (3) the existence of undisclosed material facts about the Property; or (4) a court or arbitration decision that a broker who was not compensated in connection with a transaction is entitled to compensation from **Broker**. This clause will survive **Broker's** performance and the transfer of title.
   (e) Perform any act reasonably necessary to comply with FIRPTA (Section 1445 of the Internal Revenue Code).
   (f) Make all legally required disclosures, including all facts that materially affect the Property's value and are not readily observable or known by the buyer. **Seller** certifies and represents that **Seller** knows of no such material facts (local government building code violations, unobservable defects, etc.) other than the following:
   _____ N/A _____
   **Seller** will immediately inform **Broker** of any material facts that arise after signing this Agreement.
   (g) Consult appropriate professionals for related legal, tax, property condition, environmental, foreign reporting requirements, and other specialized advice.

8. **Compensation: Seller** will compensate **Broker** as specified below for procuring a buyer who is ready, willing, and able to purchase the Property or any interest in the Property on the terms of this Agreement or on any other terms acceptable to **Seller**. **Seller** will pay **Broker** as follows (plus applicable sales tax):
   (a) _____ 6% of the total purchase price plus $_____ OR $_____, no later than the date of closing specified in the sales contract. However, closing is not a prerequisite for **Broker's** fee being earned.
   (b) _____ 0 ($ or %) of the consideration paid for an option, at the time an option is created. If the option is exercised, **Seller** will pay **Broker** the Paragraph 8(a) fee, less the amount **Broker** received under this subparagraph.

Seller (____) (____) and Broker/Sales Associate (____) (____) acknowledge receipt of a copy of this page, which is Page 2 of 4.
ERS-17b Rev 6/17
Serial#: 080267-200155-3211787                                                                ©2017 Florida Realtors®

105*     (c) _____ 0 ($ or %) of gross lease value as a leasing fee, on the date **Seller** enters into a lease or
106     agreement to lease, whichever is earlier. This fee is not due if the Property is or becomes the subject of a
107     contract granting an exclusive right to lease the Property.
108     (d) **Broker's** fee is due in the following circumstances: (1) If any interest in the Property is transferred, whether by
109     sale, lease, exchange, governmental action, bankruptcy, or any other means of transfer, regardless of whether
110     the buyer is secured by **Seller**, **Broker**, or any other person. (2) If **Seller** refuses or fails to sign an offer at the
111     price and terms stated in this Agreement, defaults on an executed sales contract, or agrees with a buyer to
112*     cancel an executed sales contract. (3) If, within _____ 0 _____ days after Termination Date ("Protection Period"),
113     **Seller** transfers or contracts to transfer the Property or any interest in the Property to any prospects with whom
114     **Seller**, **Broker**, or any real estate licensee communicated regarding the Property before Termination Date.
115     However, no fee will be due **Broker** if the Property is relisted after Termination Date and sold through another
116     broker.
117*     (e) **Retained Deposits:** As consideration for **Broker's** services, **Broker** is entitled to receive _____0% (50% if
118     left blank) of all deposits that **Seller** retains as liquidated damages for a buyer's default in a transaction, not to
119     exceed the Paragraph 8(a) fee.

120   **9. Cooperation with and Compensation to Other Brokers: Notice to Seller:** The buyer's broker, even if
121   compensated by **Seller** or **Broker**, may represent the interests of the buyer. **Broker's** office policy is to cooperate
122   with all other brokers except when not in **Seller's** best interest and to offer compensation in the amount of
123*   ☐ _____ 2% of the purchase price or $_____ to a single agent for the buyer; ☐ _____ 2% of the
124*   purchase price or $_____ to a transaction broker for the buyer; and ☐ _____ 2% of the purchase
125*   price or $_____ to a broker who has no brokerage relationship with the buyer.
126*   ☐ None of the above. (If this is checked, the Property cannot be placed in the MLS.)

127   **10. Brokerage Relationship: Broker** will act as a transaction broker. **Broker** will deal honestly and fairly; will account
128   for all funds; will use skill, care, and diligence in the transaction; will disclose all known facts that materially affect
129   the value of the residential property which are not readily observable to the buyer; will present all offers and
130   counteroffers in a timely manner unless directed otherwise in writing; and will have limited confidentiality with
131   **Seller** unless waived in writing.

132   **11. Conditional Termination:** At **Seller's** request, **Broker** may agree to conditionally terminate this Agreement. If
133   **Broker** agrees to conditional termination, **Seller** must sign a withdrawal agreement, reimburse **Broker** for all direct
134*   expenses incurred in marketing the Property, and pay a cancellation fee of $0.00 _____ plus
135   applicable sales tax. **Broker** may void the conditional termination, and **Seller** will pay the fee stated in Paragraph
136   8(a) less the cancellation fee if **Seller** transfers or contracts to transfer the Property or any interest in the Property
137   during the time period from the date of conditional termination to Termination Date and Protection Period, if
138   applicable.

139   **12. Dispute Resolution:** This Agreement will be construed under Florida law. All controversies, claims, and other
140   matters in question between the parties arising out of or relating to this Agreement or the breach thereof will be
141   settled by first attempting mediation under the rules of the American Mediation Association or other mediator
142   agreed upon by the parties. If litigation arises out of this Agreement, the prevailing party will be entitled to recover
143   reasonable attorney's fees and costs, unless the parties agree that disputes will be settled by arbitration as follows:
144*   **Arbitration:** By initialing in the space provided, **Seller** (____) (____), Sales Associate (____), and **Broker** (____)
145   agree that disputes not resolved by mediation will be settled by neutral binding arbitration in the county in which
146   the Property is located in accordance with the rules of the American Arbitration Association or other arbitrator
147   agreed upon by the parties. Each party to any arbitration (or litigation to enforce the arbitration provision of this
148   Agreement or an arbitration award) will pay its own fees, costs, and expenses, including attorney's fees, and will
149   equally split the arbitrator's fees and administrative fees of arbitration.

150   **13. Miscellaneous:** This Agreement is binding on **Seller's** and **Broker's** heirs, personal representatives,
151   administrators, successors, and assigns. **Broker** may assign this Agreement to another listing office. This
152   Agreement is the entire agreement between **Seller** and **Broker**. No prior or present agreements or representations
153   will be binding on **Seller** or **Broker** unless included in this Agreement. Electronic signatures are acceptable and
154   will be binding. Signatures, initials, and modifications communicated by facsimile will be considered as originals.
155   The term "buyer" as used in this Agreement includes buyers, tenants, exchangors, optionees, and other categories
156   of potential or actual transferees.

Seller (____) (____) and Broker/Sales Associate (____) (____) acknowledge receipt of a copy of this page, which is Page 3 of 4.

ERS    Rev 6/17

Serial#: 080267-200155-3211787

©2017 Florida Realtors®

157* **14. Additional Terms:** _____
158 _____
159 _____
160 _____
161 _____
162 _____
163 _____
164 _____
165 _____
166 _____
167 _____
168 _____
169 _____

170* **Seller's Signature:** _____ as Ch. T Trustee Date: 3/22/19
171* Home Telephone: 813-438-3833 Buker Est. of Matthew & Olga Bartolomeo Work Telephone: Buker. Case No. Facsimile: _____
     8:B-9090-MGW
172* Address: _____
173* Email Address: _____
174* **Seller's Signature:** _____ Date: _____
175* Home Telephone: _____ Work Telephone: _____ Facsimile: _____
176* Address: _____
177* Email Address: _____
178* **Authorized Sales Associate or Broker:** _____ Date: 3/21/19
179* Brokerage Firm Name: _____ Hunt Realty Group/ Al Carapella _____ Telephone: 813-294-6545
180* Address: _____ 708 Oakgrove Dr. unit 233 Brandon Fl. 33510 _____

181* Copy returned to **Seller** on _____ by [x] email ☐ facsimile ☐ mail ☐ personal delivery.

Florida REALTORS® makes no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as REALTOR®. REALTOR® is a registered collective membership mark which may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS® and who subscribe to its Code of Ethics. The copyright laws of United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or computerized forms.

Seller (____) (____) and Broker/Sales Associate (____) (____) acknowledge receipt of a copy of this page, which is Page 4 of 4.
ERS-17b   Rev 6/17
Serial#: 080267-200155-3211787                                    ©2017 Florida Realtors®